UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SCOTTSDALE INSURANCE COMPANY,

                Plaintiff(s),

vs

BO STEEL GROUP, INC., KSK CONSTRUCTION GROUP, SEVENBERRY CONSTRUCTION LLC, 31-02 NORTHERN BLVD LLC, 30-36 NORTHERN BLVD LLC, AND ENEFRY ADONIS HIERRO,

                Defendant(s)

COMPLAINT FOR DECLARATORY JUDGMENT

Civil Action No.:_____

---

Plaintiff SCOTTSDALE INSURANCE COMPANY ("Scottsdale") by its attorneys, Goldberg Segalla LLP, for its complaint herein, alleges, upon information and belief, as follows:

1. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 et. seq. and Rule 57 of the Federal Rules of Civil Procedure.

**THE PARTIES**

2. Scottsdale is a corporation existing under the laws of Ohio, with its principal place of business in Scottsdale, Arizona, which is duly authorized to engage in the business of selling insurance in the State of New York.

3. Upon information and belief, BO STEEL GROUP, INC. ("Bo Steel"), is a domestic corporation duly organized and existing under the laws of the State of New York, maintaining its offices in the State of New York.

4. Upon information and belief, KSK CONSTRUCTION GROUP ("KSK") is a

domestic corporation duly organized and existing under the laws of the State of New York, maintaining its offices in the State of New York.

5. Upon information and belief, KSK is a foreign corporation duly licensed to do business in the State of New York and maintaining offices in the State of New York.

6. Upon information and belief, KSK is a limited liability corporation organized and existing under and by virtue of the laws of the State of New York and maintaining offices in the State of New York.

7. Upon information and belief, SEVENBERRY CONSTRUCTION LLC ("Sevenberry") is a limited liability corporation organized and existing under and by virtue of the laws of the State of New York and maintaining offices in the State of New York.

8. Upon information and belief, 31-02 NORTHERN BLVD LLC ("31-02") is a limited liability corporation organized and existing under and by virtue of the laws of the State of New York and maintaining offices in the State of New York.

9. Upon information and belief, 30-36 NORTHERN BLVD LLC ("30-36) is a limited liability corporation organized and existing under and by virtue of the laws of the State of New York and maintaining offices in the State of New York.

10. Upon information and belief, ENEFRY ADONIS HIERRO, was and is a resident of the County of Kings, City and State of New York.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that it is a civil action between parties of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

12. Venue in this district is proper under 28 U.S.C. paragraph 1391(b)(2), since a

3317941.1

substantial part of the events giving rise to the claim occurred in this judicial district, and the underlying action was brought in this district.

## FACTS

13. Bo Steel applied for a policy of insurance with Scottsdale by way of a Commercial Insurance Application dated December 10, 2012 (the "initial application"). A true and accurate copy of the initial application is attached hereto as Exhibit **A**.

14. The initial application required Bo Steel to describe its primary operations to which Bo Steel replied "Decorative Iron Works-Fencing, Railings & Gates." Exhibit A, page 2 of 4.

15. The initial application contains a fraud warning, applicable in New York, which reads as follows:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalties… (In New York, the civil penalty is not to exceed five thousand ($5,000) and the stated value of the claim for each such violation.

Exhibit A, page 4 of 4.

16. The initial application is signed by Mr. Bo Chen. Exhibit A, page 4 of 4.

17. Bo Steel was asked whether it offers any guarantees, warranties or hold harmless agreements to which it answered, "No." Exhibit A, Commercial General Liability section, page 2 of 4.

18. Bo Steel also was required to submit an Artisan Contractors Supplemental Application portion of the initial application, which was signed by Bo Chen on January 14, 2013.

3317941.1

Exhibit A, Artisan Contractors Supplemental Application.

19. The supplemental portion of the initial application requires that the applicant "Provide details of all your operations," to which Bo Steel answered "Decorative Steel-Fencing, Railings & Gates." Exhibit A, Artisan Contractors Supplemental Application page 1 of 4.

20. The supplemental portion of the initial application requires that the applicant state the total payroll of the company, which is filled in at $27,500 and the "Receipts/Sales," which Bo Steel listed at $350,000 for the current year. Exhibit A, Artisan Contractors Supplemental Application page 1 of 4.

21. The supplemental portion of the initial application requires the applicant to name the "Trade" for which it is seeking to be insured, which Bo Steel described as "Fence dealers." Exhibit A, Artisan Contractors Supplemental Application page 1 of 4.

22. In the supplemental portion of the initial application, the "Operation" is listed by Bo Steel as 100% Artisan Contractor, and the type of work is listed as 10% "Residential/New" and 90 % "Residential/Remodeling." The initial application shows that Bo Steel engages in 0% industrial and 0% commercial work. Exhibit A, Artisan Contractors Supplemental Application page 1 of 4.

23. The supplemental portion of the initial application asks if there is "Any work performed above two stories in height from grade?" to which Bo Steel checked the box titled "No." Exhibit A, Artisan Contractors Supplemental Application page 2 of 4.

24. Under "Liability Controls," the supplemental portion of the initial application asks "Do your contracts contain a hold harmless agreement in your favor?," and Bo Steel marked the box "Yes." Exhibit A, Artisan Contractors Supplemental Application page 3 of 4

25. The supplemental portion of the initial application contains a fraud provision

4

which reads:

> NOTICE TO NEW YORK APPLICANTS (Other than automobile): Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

See Exhibit A, page 4 of 4.

26. Based on the representations made in the initial application, Scottsdale issued a policy of insurance, policy number CPS1663547, to Bo Steel as the named insured (the "initial policy") for a specified premium. A true and accurate copy of the initial policy is attached as Exhibit **B** hereto.

27. The initial policy provided Commercial General Liability insurance on an occurrence basis, with an effective policy period of January 14, 2013 to January 14, 2014. Exhibit B.

28. Bo Steel submitted a Commercial Insurance Application for renewal of the initial policy for the period January 14, 2014 to January 14, 2015 on December 23, 2013 ( the "renewal application"). A true and accurate copy of the application is attached hereto as Exhibit **C**.

29. The general portion of the renewal application asks for a "DESCRIPTION OF PRIMARY OPERATIONS" to which Bo Steel answered "Decorative Iron Works: fencing, railings, gates." See Exhibit C, page 2 of 4.

30. The renewal application contains a fraud warning, applicable in New York, which reads as follows:

3317941.1

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalties... (In New York, the civil penalty is not to exceed five thousand ($5,000) and the stated value of the claim for each such violation.

Exhibit C, page 4 of 4.

31. The renewal application is signed by Mr. Bo Chen and dated January 10, 2014. Exhibit C, page 4 of 4.

32. Bo Steel also was required to submit an Artisan Contractors Supplemental Application portion of the renewal application, which was signed by Bo Chen on January 10, 2014. (the "supplemental application"). Exhibit C, Artisan Contractors Supplemental Application.

33. The supplemental portion of the renewal application requires that the applicant "Describe all operations in detail," to which Bo Steel answered "Decorative Iron Works: fencing, railings, gates." Exhibit C, page 1 of 5.

34. The supplemental portion of the renewal application requires that the applicant state the total payroll of the company, which is filled in at $27,500 and the "Receipts/Sales," which Bo Steel listed at $300,000 for the current year and $350,000 for the previous year. Exhibit C, pages 1 & 2 of 5.

35. The supplemental portion of the renewal application requires the application to describe the "Trade" for which it is seeking to be insured, which Bo Steel described as "Fence Deal." Exhibit C, page 1 of 5.

36. In the supplemental portion of the renewal application, the "Operation" is listed

6

by Bo Steel as 100% Artisan Contractor, and the type of work is listed as 10% "Residential/New" and 90 % "Residential/Remodeling." The application shows that Bo Steel engages in 0% industrial and 0% commercial work. Exhibit C, page 1 of 5.

37. The supplemental portion of the renewal application asks if there is "Any work performed above two stories in height from grade?" to which Bo Steel checked the box titled "No." Exhibit C, page 3 of 5.

38. Under "Liability Controls," the supplemental portion of the renewal application asks "Does applicant use a written contract with customers?," "Does applicant use written contracts with subcontractors?," "Do applicant's contracts contain a hold harmless agreement in applicant's favor?," and "is applicant added as an additional insured on the subcontractors' policies?" Bo Steel marked the box "Yes" to each of these questions. Exhibit C, page 3 of 5.

39. Likewise, under "Liability Controls," the supplemental portion of the renewal application asks "Does application obtain certificates of insurance from all subcontractors?" to which Bo Steel check the box marked "Yes." Exhibit C, page 3 of 5.

40. The supplemental portion of the renewal application contains a fraud provision which reads:

> NOTICE TO NEW YORK APPLICANTS (Other than automobile): Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Exhibit C, page 5 of 5.

41. Based on the representations in the renewal application, Scottsdale issued a

renewal policy, policy number CPS1902876, to Bo Steel for the period of January 14, 2014 to January 14, 2015 (the "renewal policy"). A true and accurate copy of the renewal policy is attached as Exhibit **D** hereto.

42. The renewal policy does not contain an additional insured endorsement providing coverage for KSK Construction Group, Sevenberry, 31-02 or 30-36. Exhibit D.

43. The policy contains the following relevant Condition:

> 6. Representations
> By accepting this policy, you agree:
> a. The statements in the Declarations are accurate and complete;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance upon your representations.

Exhibit D, page 12 of 16.

44. The policy also contains the following potentially relevant exclusions:

> This insurance does not apply to:
>
> \* \* \*
>
> d. Workers' Compensation And Similar Laws
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> e. Employer's Liability
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>    (a) Employment by the insured; or
>    (b) Performing duties related to the conduct of the insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury. – can you take out automatic numbering
>
> This exclusion does not apply to liability assumed by the insured under

8

an "insured contract."

Exhibit D, page 2 of 16.

45. On June 13, 2014, Bo Steel employee Enefry Adonis Hierro ("Hierro") was allegedly injured while installing metal decking at during the construction of a 12-story self-storage facility located at 30-46 Northern Boulevard, Long Island City, New York (the "Building").

46. Shortly thereafter, on or about June 25, 2014, Hierro commenced an action in Kings County Supreme Court styled <u>Enefry Adonis Hierro v. KSK Construction Group, Sevenberry Construction LLC, 31-02 Northern Blvd. LLC and 30-36 Northern Blvd. LLC</u>, Index No. 505812/2014 (the "Underlying Action"), seeking damages for injuries he allegedly sustained in the accident. A true and accurate copy of the underlying complaint is attached as Exhibit **E**.

47. After being notified of the accident and the Underlying Action, Scottsdale began its claim investigation.

48. During the investigation Scottsdale was provided with a copy of a subcontract dated August 24, 2013 between Bo Steel and Sevenberry, under which Bo Steel was hired to perform all "Fabrication and Installation of Metal Decks and Miscellaneous Steel" needed for the project (the "Subcontract"). A true and accurate copy of the subcontract is attached hereto as Exhibit **F**.

49. The Subcontract price was $800,000. The Subcontract's scope of work section indicates that Bo Steel was required to furnish and install the metal decks, metal stairs and railings, safety cables, pit ladder and guard railings needed throughout the building. Exhibit F.

50. On August 11, 2014, Scottsdale obtained a written statement from Tomas

9

Olazabal, who described himself as Bo Steel's foreman for the project. A true and accurate copy of Olazabal's statement is attached as Exhibit **G**.

51. Olazabal explained that Bo Steel was hired to install the metal decking, stair railings and "elevator shaft" at the Building and had begun work at the site "in late November early December 2013." Exhibit G.

52. According to Olazabal, Hierro was welding metal decking in place on the floor adjacent to a stair opening on the date in question. Hierro walked towards the elevator shaft to assist his coworkers with hauling up some additional sheets of metal decking when he stepped into a 3'x3' opening and fell 12 feet to the floor below. Exhibit G.

53. Upon information and belief, the accident occurred on the eleventh story of the Building.

54. Accordingly, in completing both the initial application and the application for renewal of the policy, Bo Steel misrepresented many facts related to the nature of the work it performed.

55. As discussed above, the applications submitted in connection with the Scottsdale Policies stated that Bo Steel's "primary operations" consisted of decorative iron works; fencing, railing, gates. Bo Steel did not disclose its structural metal work, such as its installation of metal stairs and metal floor decking at the Building. Exhibit A, C and F.

56. Bo Steel also expressly misrepresented the fact that it was performing structural metal work at heights exceeding two stories from grade, and Scottsdale had no reason to assume such work was being performed. As Bo Steel indicated on both applications that no work was performed above two stories high.

57. Moreover, when the renewal application was completed on January 10, 2014, Bo

10

Steel had already been working at the Building for several months. The Subcontract is dated August 24, 2013 and calls for Bo Steel to perform work throughout the 12-story Building. Exhibits C & F.

58. Additionally, the $350,000 and $300,000 respectively disclosed as Bo Steel's current Receipts/Sales in its applications are inconsistent with the Subcontract's $800,000 contract price. Exhibits C & F.

59. Bo Steel described its operations as consisting of 100% residential projects in both applications, and the project it was working on at the time of the alleged accident was industrial/commercial. Exhibits A, C & F.

60. The misrepresentations and/or omissions of fact in Bo Steel's applications were material to Scottsdale's agreement to issue the initial general liability and renewal policies and its calculation of the appropriate amount of premium to be charged.

61. If the application contained correct information, Scottsdale would not have issued the initial or renewal policy.

62. Scottsdale has advised Bo Steel of its rescission of the renewal policy *ab initio* based upon the misrepresentations in the application and is in the process of returning all premiums paid to Bo Steel. A true and accurate copy of the letter rescinding the policy is attached hereto as Exhibit **H**.

## COUNT I

### (Rescission as against Bo Steel - Both Policies)

63. Scottsdale repeats and realleges paragraphs 1-62 as if stated more fully in this paragraph 63.

64. In completing the initial application renewal application, Bo Steel misrepresented

11

3317941.1

facts about the nature of its business, they type of work performed, the height at which work is performed and the amount of sales it makes.

65. Based upon and in reliance on the information contained in the applications, the initial and renewal policies were issued to Bo Steel on behalf of Scottsdale.

66. If the applications contained correct information, Scottsdale would not have issued the policies.

67. Scottsdale has advised Bo Steel of its rescission of the policies *ab initio* based upon the misrepresentations in the applications.

68. Moreover, Scottsdale has returned to Bo Steel the premiums paid by it which are attributable to policies numbered CPS1663547 and CPS1902876;

69. Scottsdale is entitled to a declaration that the initial and renewal policies are void *ab initio* based upon the material misrepresentations in the initial and renewal applications pursuant to New York Insurance Law §3105.

## COUNT II

### (Rescission as against Bo Steel – Renewal Policy)

70. Scottsdale repeats and realleges paragraphs 1-62 as if stated more fully in this paragraph 70.

71. In completing the renewal application, Bo Steel misrepresented facts about the nature of its business, they type of work performed, the height at which work is performed and the amount of sales it makes.

72. Based upon and in reliance on the information contained in the renewal application, the renewal policy was issued to Bo Steel on behalf of Scottsdale.

73. If the applications contained correct information, Scottsdale would not have

issued the renewal policy.

74. Scottsdale has advised Bo Steel of its rescission of the policy *ab initio* based upon the misrepresentations in the applications.

75. Moreover, Scottsdale has returned to Bo Steel the premiums paid by it which are attributable to policy number CPS1902876;

76. Scottsdale is entitled to a declaration that the renewal policy is void *ab initio* based upon the material misrepresentations in the renewal application pursuant to New York Insurance Law §3105.

## COUNT III

**(KSK Construction Group, Sevenberry Construction LLC, 31-02 Northern Blvd LLC, and 30-36 Northern Blvd LLC, do not qualify as additional insureds under the policy )**

77. Scottsdale repeats and realleges paragraphs 1-62 as if stated more fully in this paragraph 77.

78. The renewal policy did not list KSK Construction Group, Sevenberry, 31-02 or 30-36 as additional insureds and the renewal policy contains no provision under which those parties can assert coverage as additional insureds.

79. Accordingly, Scottsdale seeks a declaratory judgment that it has no duty to defend or indemnify KSK Construction Group, Sevenberry, 31-02 or 30-36 in the underlying action.

## COUNT IV

**(KSK Construction Group, Sevenberry Construction LLC, 31-02 Northern Blvd LLC, and 30-36 Northern Blvd LLC, do not qualify as additional insureds as the renewal policy is void *ab initio*. )**

80. Scottsdale repeats and realleges paragraphs 1-62 as if stated more fully in this

3317941.1

paragraph 80.

81. Due to Bo Steel's material misrepresentations noted above and in Count I and/or II, the policies are void *ab initio* or the renewal policy is void *ab initio*.

82. The accident giving rise to the underlying action took place on or about June 13, 2014, during the renewal policy period.

83. Because the policy(s) are void *ab initio* there is no possibility for coverage to exist for KSK Construction Group, Sevenberry, 31-02 or 30-36 as additional insureds.

84. Accordingly, Scottsdale seeks a declaratory judgment that it has no duty to defend or indemnify KSK Construction Group, Sevenberry, 31-02 or 30-36 in the underlying action.

### COUNT V

**(Declaratory Judgment as against Bo Steel)**

85. Scottsdale repeats and realleges paragraphs 1-62 as if stated more fully in this paragraph 85.

86. The renewal policy excludes coverage for Workers' Compensation and Employer's Liability for bodily injury to an employee of the insured arising out of the course of the employment by the insured.

87. Specifically, the policy states: The policy also contains the following potentially relevant exclusions:

This insurance does not apply to:

         \*      \*      \*

    d. Workers' Compensation And Similar Laws
       Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

    e. Employer's Liability
       "Bodily injury" to:

3317941.1

   (3) An "employee" of the insured arising out of and in the course of:
    (c) Employment by the insured; or
    (d) Performing duties related to the conduct of the insured's business; or
   (4) The spouse, child, parent, brother or sister of that "employee" as consequence of Paragraph (1) above.

  This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury. – can you take out automatic numbering

  This exclusion does not apply to liability assumed by the insured under an "insured contract."

88. The alleged injuries asserted in the underlying action arose out of the underlying plaintiff's employment with the insured.

89. Accordingly, Scottsdale does not owe Bo Steel coverage with regard to the underlying action as the above referenced exclusion applies to bar coverage.

WHEREFORE, Scottsdale demands judgment finding and declaring the rights of the parties as follows:

1. That the Policies numbered CPS1663547 and CPS1902876 are rescinded and void *ab initio*;

2. That the Court rescind the renewal policy numbered CPS1902876;

3. That in light of the rescission of the aforesaid policy, the Court finds and declares that Scottsdale has no duty or obligation to defend Bo Steel in connection with the underlying claim;

4. Inasmuch as Policies numbered CPS1663547 and CPS1902876 are rescinded *ab initio*, there is no duty to defend or indemnify Bo Steel in connection with any past or future claims that may have accrued from January 14, 2013 to January 14, 2015.

3317941.1

5.  In the alternative, that Scottsdale owes no duty to defend or indemnify Bo Steel in the Underlying Action;

6.  That in light of the rescission, Scottsdale owes no duty to defend or indemnify KSK Construction Group, Sevenberry, 31-02 or 30-36 in the Underlying Action;

7.  That, because KSK Construction Group, Sevenberry, 31-02 or 30-36 do not qualify as additional insureds, Scottsdale owes no duty to defend or indemnify KSK Construction Group, Sevenberry, 31-02 or 30-36 in the Underlying Action;

8.  That the court grant Scottsdale such other and further relief as it deems just and proper;

Dated: Buffalo, New York
December 16, 2014

Respectfully submitted,

Goldberg Segalla LLP

By: _____
Jonathan Schapp, Esq.
*Attorneys For Plaintiff*
665 Main Street, Suite 400
Buffalo, NY 14203-1425
Phone: 716.566.5400
Fax:    716.566.5401

TO:

Glenn Verchick, Esq.
Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd, LLP
Attorneys for Hierro
225 Broadway, 13th Floor
New York, NY 10007

KSK Construction Group
190 North 10th Street
Suite 309
Brooklyn, NY 11211

3317941.1

Sevenberry Construction LLC
190 North 10th Street
Suite 309
Brooklyn, NY 11211

31-02 Northern Blvd LLC
171 Beach 147th Street
Neponsit, NY 11694

31-02 Northern Blvd LLC (alternative address)
1590 Troy Ave
Brooklyn, NY 11234

30-36 Northern Blvd LLC
171 Beach 147th Street
Neponsit, NY 11694

30-36 Northern Blvd LLC (alternative address)
30-36 Northern Blvd.
Long Island City, NY 11101

Bo Steel Group, Inc.
172-19 28th Ave.
Flushing, NY 11358

3317941.1